UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80323-CIV-MARRA/MATTHEWMAN

U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR LXS 2006-2N,

      Plaintiff,

vs.

MARGARET P. CAPPARELLI, *et al.*,

      Defendant(s)/Third Party Plaintiff(s),

vs.

ONEWEST BANK GROUP, LLC, a foreign
limited liability company, and ONEWEST
BANK, FSB, a foreign corporation,

      Third Party Defendants.
_____/

## ORDER AND OPINION

THIS CAUSE is before the Court upon U.S. Bank, N.A., as Trustee for the LXS 2006-2N ("U.S. Bank" or "Plaintiff") Motion to Dismiss Third Party Complaint or, in the alternative, Motion for More Definite Statement [DE 20], and OneWest Bank Group, LLC and Onewest Bank, FSB (together "Third Party Defendants" or "OWB") Third Party Defendants' Motion to Dismiss Third Party Plaintiff's Complaint [DE 28]. U.S. Bank and Third Party Defendants will be collectively referred to as "Movants." The Court has carefully reviewed the entire Court file and is fully advised in the premises.

## Introduction

On February 28, 2013, Plaintiff filed a mortgage foreclosure action in the Circuit Court of the Fifteenth Judicial Circuit against Defendant and Third Party Plaintiff, Margaret P. Capparelli ("Capparelli").  Capparelli was served with the Complaint on March 5, 2013, and on March 20, 2013, Capparelli served her Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint.  Capparelli's Counterclaim and Third-Party Complaint ("TPC") asserts the following statutory and common law claims: (1) breach of contract; (2) violations of state and federal deceptive and unfair trade practices laws; (3) illegal consumer collection practices, and (4) violations of state and federal RICO laws.  Plaintiff's Complaint seeks to repossess the property and damages.  The counterclaim and TPC seek, among other things, damages, actual and consequential damages, injunctive relief, declaratory relief, pre- and post-judgment interest, attorneys' fees and costs.  Capparelli[1] removed this mortgage foreclosure action pursuant to 28 U.S.C. § 1441, claiming this state action is within the original jurisdiction of this Court and properly removed under 28 U.S.C. § 1332 (diversity of citizenship; amount in controversy).  Plaintiff and

---

[1] Capparelli is a Florida resident.  It is well established that for removal to be proper under 28 U.S.C. § 1441 "no defendant can be a citizen of the state in which the action was brought." *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (citing 28 U.S.C. § 1441(b).  Inasmuch as removal by a resident defendant is a procedural defect that does not deprive a federal court of subject matter jurisdiction when complete diversity exists, objections to removal based on residency of defendant are waived if plaintiff fails to file a motion for remand within the statutory 30-day deadline.  28 U.S.C.A. §§ 1441(b), 1447(c).

Third Party Defendants filed the instant Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## Standard of Review for Motions to Dismiss

The general rule in federal court is that a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to provide factual allegations that raise a right of relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id.* (citations omitted).  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

To resolve a motion to dismiss, the district court "may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.*  Then, "[w]hen there are well-pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

 If an action is dismissed it should generally be dismissed without prejudice. *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239-40 (11th Cir. 2000).  Leave to amend, however, "need not be granted where amendment would be futile." *Id.*; *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004); *see, also*, *Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 553 (Fla. Dist. Ct. App. 2003). When a motion to amend is denied based upon futility, the court makes a legal conclusion that any amendment to the complaint necessarily would fail.  *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822 (11th Cir. 1999).

<u>Discussion</u>

 Beginning in May 2011, Capparelli, a borrower, alleges that OWB, as owner and holder of the mortgage loan at issue in the underlying foreclosure case, began communicating with Capparelli in an effort to modify her loan.  Capparelli alleges that the content of these communications constituted: (1) a breach of contract; (2)

violations of the Federal Deceptive and Unfair Trade Practices Act ("FDUPTA"); (3)

violations of several sections of the Fair Debt Collection Practices Act ("FDCPA") and

Florida Consumer Collection Practices Act ("FCCPA"); and (4) violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO") on the part of OWB.

Movants argue Capparelli's claims fail to state causes of action under Rule 12(b)(6).

OWB also raises a time-bar issue as to one claim.

Both OWB and Plaintiff argue the Court should dismiss the TPC in its entirety

because Capparelli has not pled her complaint with the required specificity under

Rule 8 to give "fair notice" of the claims brought.  In particular, Capparelli makes no

distinction between U.S. Bank and the Third Party Defendants and merely lumps them

together in each claim and provides no factual basis to distinguish their conduct.

Capparelli responds that no distinction between U.S. Bank and OWB is necessary

because she has alleged that they are agents of one another, that they operated in

concert and as a common enterprise, and therefore are liable for all actions

committed by each other.  Compl. ¶¶ 50, 51, 40-55.

The Court agrees with Movants that Capparelli's purported allegations of

agency and common enterprise are naked and baseless assertions.  Nowhere in the

TPC does Capparelli allege any grounds to suggest these entities are agents or

instrumentalities of one another.  Lumping Movants together creates confusion and

makes the analysis of the Complaint unnecessarily burdensome, and results in

Capparelli making accusations that are just not accurate.  *Court Appointed Receiver*

*of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 05-60080-CIV, 2011 WL 1233126, *2 (S.D. Fla. Mar. 30, 2011).  By comingling the factual allegations against all defendants, realleging every previous allegation by reference in each claim for relief, and presenting all counts under the doctrine of joint and several liability, Capparelli has effectively placed the onus on Movants to discern which, if any, of the allegations are brought against them.  This is wholly improper.  Accordingly, on these grounds alone, the Court will dismiss the TPC.  However, there are several other arguments that the Court will address so that Cappaarelli is apprised of other problems with the TPC when considering the filing of an Amended Third Party Complaint.

<u>Count I</u>

Count I of the TPC asserts that Plaintiff and OWB breached their duties under the note and mortgage by committing one or more of the following acts and/or omissions:

a.  Engaging in duress[2] by requiring Capparelli to default on her obligations in order to request mortgage assistance;

b.  Engaging in bad faith by failing to fully and adequately disclose to Capparelli the consequences of a strategic default;

c.  Misrepresenting to Capparelli the loan modification process, request for mortgage assistance process and administration process so as to create an unreasonable risk of harm; and

---

[2]  As to a claim of "duress," duress is generally considered a means of voiding a contract entered into <u>under</u> duress, and it is not an element of a breach of contract claim.  *Ferrari v Board of Health*, 24 Fla. 390, 5 So. 1(1888); *Davis v Hefty Press, Inc.*, 152 Fla. 385, 11 So. 2d 884 (1943).

      d.     Intentionally interfering in Capparelli's personal finances and contractual affairs by instructing Capparelli to stop making the payments due under the loan and placing Capparelli in financial jeopardy from which any recovery would be impossible.

TPC ¶ 59.  Of the "terms" allegedly breached, none are alleged to be in the Note or Mortgage.  To state a cause of action for breach of contract, one must allege (1) a valid contract; (ii) a breach; and (iii) damages stemming therefrom.  *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. Dist. Ct. App. 2003).[3]  Rather than a breach, it appears Capparelli is alleging violations of the covenant of "good faith and fair dealing."  However, alleging a breach of the obligation of good faith and fair dealing requires the concomitant allegation that an express term of the contract has been breached.  *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005) ("a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract"); *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438-39 (S.D. Fla. 1996) ("a party cannot maintain a claim for breach of the implied covenant of good faith where the party cannot claim a breach of any express contractual provision").  The TPC merely alleges that OWB and Plaintiff engaged in bad faith, but fails to identify the terms of the Note or Mortgage that OWB

---

[3]  In a diversity case, the Court applies Florida law.  *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132-33 (11th Cir. 2010); *Royal Ins. Co. of America v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001); *George v. Wells Fargo Bank, N.A.*, 13-80776-CIV, 2014 WL 61487, n.3 (S.D. Fla. Jan. 8, 2014).

and Plaintiff allegedly violated.  Consequently, without alleging a violation of an express term of a contract between OWB, Plaintiff and Capparelli, Capparelli has failed to state a cause of action in Count I.  For this additional reason, Count I will be dismissed.[4]

## Count II

In Count II, Capparelli asserts a claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*.  The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"  *Id*. § 501.204(1).  The FDUTPA's purpose is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct

_____

[4]  If Capparelli is attempting to assert that OWB or Plaintiff owed her a fiduciary duty, that claim also fails.  *Bruhl v. PricewaterhouseCoopers Int'l*, No. 03-23044-Civ, 2008 WL 899250, at *4 (S.D. Fla. Mar.31, 2008) (conclusory allegations that a fiduciary relationship exists between a bank and its borrower, without any supporting factual assertions, are insufficient to state a claim for breach of an implied fiduciary duty); *see also Capital Bank v. MVB, Inc.*, 644 So.2d 515, 521 (Fla. Dist. Ct. App. 1994) (special circumstance were found to transform the bank's traditional status as a non-fiduciary arms-length lender into a fiduciary with a duty to disclose.  This transformation occurred, and Capital Bank was found to have breached its fiduciary duty, when Capital Bank facilitated a transaction between two of its customers, it expressly invited a customer's reliance by urging the customer to trust that the bank's plans would benefit his business, it possessed confidential information about each customer, and it failed to disclose material information to the customer which failure resulted in harm to the customer).  *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 05-60080-CIV, 2011 WL 1233106, *7 (S.D. Fla. Mar. 30, 2011).

of any trade or commerce." *Id*. § 501.202(2).   A practice is unfair if it "offends

established public policy" or is "immoral, unethical, oppressive, unscrupulous, or

substantially injurious to consumers."  *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842

So.2d 773, 777 (Fla. 2003) (internal quotation marks omitted).  The TPC alleges:

> The Plaintiff and Third Party Defendants violated the Act by engaging in
> unfair and deceptive acts and practices, including, but not limited to,
> establishing a loan modification evaluation process specifically designed
> and intended to unreasonably delay, hinder, obstruct and otherwise
> frustrate the homeowner's request for mortgage assistance in order to
> ultimately deny the request; establishing a loan modification evaluation
> process specifically designed and intended to cause the homeowner to
> become significantly behind in their loan payments so that a mortgage
> foreclosure would be unavoidable and inevitable; failing to fully and
> adequately disclose to the homeowner their loan modification process
> and length of delays which may occur so that the homeowner may make
> informed decisions throughout the process and reinstate the loan if
> necessary; establishing a loan modification evaluation process
> specifically designed and intended to place the homeowner in financial
> jeopardy from which any recovery would be unfeasible; establishing a
> loan modification evaluation process specifically designed and intended
> to interfere and control the homeowner's personal finances and
> governance by requiring that the mortgage loan be in default prior to
> any request for mortgage assistance and intentionally delaying the
> modification so that the homeowner's personal financial situation is
> irreparably prejudiced; and, continuing to engage in the collection of
> the debt so as to pressure and/or coerce the homeowner into resolving
> the situation to the detriment of the homeowner and the advantage of
> the Third Party Defendants.

TPC, ¶ 67.  OWB and Plaintiff argue that this claim must be dismissed because they

are statutorily exempt from FDUTPA.

The parties or activities excluded from operation of FDUPTA are set forth in

section 501.212, Florida Statutes, which states, in part, that FDUPTA does not apply

to "(4) Any person or activity regulated under laws administered by . . . (b) Banks and savings and loan associations regulated by the Office of Financial Regulation of the Financial Services Commission; [and] (c) Banks or savings and loan associations regulated by federal agencies[.]"  Fla. Stat. § 501.212(4)(b) and (c).

The first question then is whether the service provided to Capparelli by Plaintiff and OWB was by a bank or savings and loan association regulated by the Office of Financial Regulation of the Financial Services Commission or other federal agency.  *W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 782 (Fla. Dist. Ct. App. 1996). If so, Florida courts then resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of the federal agency.  *Id.* at 782-83.  *See, also, Groves v. U.S. Bank*, 8:10-CV-2665-T-17TGW, 2011 WL 2192821 (M.D. Fla. June 6, 2011).

U.S. Bank is a subsidiary of U.S. Bancorp, a national bank.  TPC ¶ 34.  U.S. Bank asserts it is regulated by the SEC under the National Bank Act and is therefore not subject to FDUPTA.  DE 24, Ex. 1.  OneWest Bank, FSB claims to be exempt asserting it is a federal savings bank also listed with the SEC.  Capparelli responds that whether the statutory exemption applies to Movants is a question of fact to be resolved at trial or through summary judgment.  The Court agrees.

OWB adds that if this Court decides that it is not exempt under FDUPTA, the TPC still fails to state a claim upon which relief can be granted because it does not

contain the particularity required under Rule 9(b) of the Federal Rules of Civil

Procedures.  *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002)

("Most courts construing claims alleging violations of the Federal Deceptive Trade

Practices Act or its state counterparts have required the heightened pleading

standard requirements of Rule 9(b).").  Federal courts in this district have come out

on both sides of this issue, and the undersigned has yet to weigh in on this question.

*See Randolph v. J.M. Smucker Co.*, 13-80581-CIV, 2014 WL 1018007, *4 (S.D. Fla. Mar.

14, 2014).  Compare *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1354-55 (S.D.

Fla. 2012) (finding that the pleading requirements of Rule 9(b) do not apply to a

FDUPTA claim) with *Llado-Carreno v. Guidant Corp.*, 09-20971-CIV, 2011 WL 705403,

*5 (S.D. Fla. Feb. 22, 2011) (finding that Rule 9(b) does apply to FDUPTA claims); and

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 10-22153-CIV, 2011 WL 4434891

(S.D. Fla. Sept. 23, 2011) ("the allegations relating to the FDUPTA violation . . . have

failed to meet the requisite particularity under Rule 9(b)").

     Because the FDUPTA is a consumer and business protection statute that is

remedial in nature,[5] this Court is inclined to align with the courts that construe the

---

[5]  The provisions of this part shall be construed liberally to promote the
following policies:
    (1)     To simplify, clarify, and modernize the law governing consumer
               protection, unfair methods of competition, and unconscionable,
               deceptive, and unfair trade practices.
    (2)     To protect the consuming public and legitimate business enterprises
               from those who engage in unfair methods of competition, or
               unconscionable, deceptive, or unfair acts or practices in the conduct of

FDUPTA liberally in favor of consumers.  *Fonte v. AT & T Wireless Services, Inc.*, 903 So.2d 1019, 1024 (Fla. Dist. Ct. App. 2005) ("FDUTPA is a remedial statute designed to protect consumers"). "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.'" *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000)). Moreover, "Florida state courts have stated that FDUTPA claims are 'a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.'" *Costa v. Kerzner Int'l Resorts, Inc.*, No. 11–60663–Civ, 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011) citing *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So.2d 592, 598 (Fla. Dist. Ct. App. 2004); *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet*, 420 F. Supp. 2d 1288, 1310–11 (S.D. Fla. 2005); and *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000) ("[T]he plaintiff need not prove the elements of fraud to sustain an action under the statute.").

---

    any trade or commerce.
  (3)  To make state consumer protection and enforcement consistent with
    established policies of federal law relating to consumer protection.
Fla. Stat. § 501.202 (2014). *See also Beacon Prop. Mgmt., Inc. v. PNR, Inc.*, 890 So.2d 274, 279 (Fla. Dist. Ct. App. 2004).

Therefore, because the undersigned finds that Rule 9(b) does not apply to FDUTPA claims, its requirements cannot serve as a basis to dismiss those claims. *Toback v. GNC Holdings, Inc.*, 13-80526-CIV, 2013 WL 5206103, n.1 (S.D. Fla. Sept. 13, 2013) (Rule 9(b) does not apply to FDUPTA); *Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) (same).

OWB's third argument is that its conduct in prelitigation negotiations prior to the foreclosure proceeding does not constitute trade or commerce. Capparelli responds that their pre-foreclosure negotiations is not what is alleged in the TPC. "[A]t the time the request for mortgage assistance was made all loan payments were current. It was at the Third Party Defendants' request that the loan went into default (manufactured default) and Capparelli's claims arise from OWB's conduct thereafter. At no time material to the Third Party Plaintiff's claims and allegations was there a judicial foreclosure proceeding initiated or pending between the parties. All of OWB's alleged conduct and actions indisputably involved trade or commerce (interstate telephone communications and interstate mail)." DE 31 at 6.

The Court finds OWB's supplemental arguments rely upon facts outside the TPC which the Court cannot consider on a Motion to Dismiss. Thus, Count II will not be dismissed on these grounds. Nonetheless, Capparelli must distinguish and differentiate the factual allegations and theories directed to one defendant in a count separate from every other defendant (unless certain defendants are alleged to be jointly liable for a particular claim). She must correspond allegations of fact or

law under each claim separately against each defendant or set of defendants sued jointly, and state exactly what constitutes the basis for liability against each.

## Count III

Count III, entitled "Illegal Consumer Collection," is a claim pursuant to 15 U.S.C. § 1692, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), and § 559.55, Florida Statutes, Florida Consumer Collection Practices Act ("FCCPA"). The TPC alleges that Plaintiff's and OWB's collection activities violated the FDCPA and FCCPA "in that they were claiming, attempting and threatening to collect and enforce the consumer mortgage debt by foreclosure action where they knew or should have known that:

a.   Their claim was the direct approximate result of their direct and material interference in Capparelli's personal finances;

b.   Continuing to directly communicate with Capparelli after notice of representation in an effort to further intimidate, harass and coerce the Defendant into a disadvantageous legal and equitable position; and,

c.   Third Party Defendants' unconscionable and deceptive methods and practices in collecting the loan should preclude them from seeking judicial enforcement."

TPC ¶ 74.

Movants urge the Court to dismiss this Count on the basis that the bank is not a debt collector within the meaning of the statute,[6] and that foreclosing on a security

---

[6]  Section 1692a of the FDCPA defines "debt collector" as the following: The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any

interest is not debt collection activity under the FDCPA.  In support of their position, Movants rely on *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009) (determining that "the act of foreclosing on a security interest is not debt collection activity for the purposes of the FDCPA") and *Birster v. American Home Mortg. Servicing, Inc.*, 2011 WL 2678927 (S.D. Fla. 2011) ("*Birster I*") (holding that mortgage servicer does not engage in the collection of a debt).

However, Movants have ignored the fact that the exact legal contention upon which they rely from *Birster I* was reversed, and that the holdings in *Warren* and *Birster I* have been called into question by the Eleventh Circuit's later opinions in *Birster v. American Home Mortg., Servicing, Inc.*, 481 F. App'x 579, 583 n. 2 (11th Cir. 2012) ("*Birster II*") and *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012) ("*Reese*").  *See Santiago v. EverBank*, 2013 WL 1176074 (N.D. Ala. Mar.19, 2013).

---

business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests....

15 U.S.C. § 1692a(6). The substantive provisions of the FDCPA that follow § 1692a prohibit "debt collectors" from taking certain actions.  Therefore, whether an individual or entity is a "debt collector" is determinative of liability under the FDCPA. *Birster v. Am. Home Mortgage Servicing, Inc.*, 481 F. App'x 579, 581-82 (11th Cir. 2012).

The Eleventh Circuit has now made clear, "a communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest."  *Reese*, 678 F.3d at 1218; *Birster II*, 481 F. App'x at 583 ("[A]n entity can both enforce a security interest and collect a debt."); *see also Rotenberg v. MLG, P.A.,* No. 13-cv-22624-UU, 2013 WL 5664886, at *3 (S.D. Fla. Oct.17, 2013) (holding that a defendant law firm was engaged in debt collection activity under the FDCPA when it sent an allegedly deceptive notice to the plaintiff along with a mortgage foreclosure complaint); *Samson v. Marinosci Law Grp., P.C.*, 13-61677-CIV, 2013 WL 5789216 (S.D. Fla. Oct. 29, 2013); *Lara v. Specialized Loan Servicing, LLC,* 1:12-CV-24405-UU, 2013 WL 4768004 (S.D. Fla. Sept. 6, 2013) (a debt collector could be liable under the FDCPA even though it was also enforcing a security interest); *Lewis v. Marinosci Law Grp., P.C.*, 13-61676-CIV, 2013 WL 5789183 (S.D. Fla. Oct. 29, 2013).  Accordingly, the motions to dismiss Count III based on the legal contention that foreclosing on a security interest is not debt collection activity under the FDCPA will be denied.

OWB also argues that at least part of Capparelli's claims for individual violations of the FDCPA by OWB are time-barred because some of the contact with OWB which Capparelli alleges gives rise to her FDCPA claim, occurred prior to April 1, 2012, more than one year before Capparelli filed her TPC.  Pursuant to 15 U.S.C. §1692, Capparelli only had one year to bring her claim from the date of the alleged violation.

Capparelli has alleged that OWB's violations of the FDCPA occurred between May 2011 and August 2012.  While it is apparent from the face of the TPC that several referenced communications from OWB occurred prior to April 1, 2012, FDCPA claims are not time barred to the extent that it alleges a discrete violation of the FDCPA within the limitations period.  *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1272 (M.D. Fla. 2008) ("In this case, the filing of the state court action on April 5, 2006 was well within the one-year limitations period.  That Defendants sent a dunning letter outside the limitations period does not render Plaintiff's FDCPA claim time-barred, where, as here, Plaintiff has alleged a discrete violation within the limitations period"); *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000) (the court may assert jurisdiction and allow the case to go forward based only on the communications that fall within the statutorily permitted time period).  Accordingly, the motions to dismiss Count III on these grounds will be denied.  However, when repleading this count, Capparelli should only raise those alleged violations that occurred on or after April 1, 2012.  Regardless of this ruling, this count is dismissed, as stated earlier, for lumping the defendants and failing to state exactly what constitutes the basis for liability against each.

**Count IV**

This last count is labeled, "Violations of § 895.01, et seq., Florida Statutes, and 18 U.S.C. § 1961, 1962 & 1964."  In attempting to state a RICO claim, Capparelli makes only conclusory and unsupported allegations that the Third Party Defendants

committed two or more predicate acts and intentionally interfered with Capparelli's quiet enjoyment of her home, engaged in deceptive practices in order to fabricate a foreclosure claim against her, and used illegal collection practices in order to improperly coerce Capparelli into waiving or relinquishing her rights to her property. This count does not pass the *Iqbal* and *Twombly* tests and will be dismissed for the additional reasons stated below.

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, permits "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]" to bring a civil suit against the violator.  Section 1964(c).  One may be liable under the RICO statute if he uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); if he acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); if, while employed by or associated with such an enterprise, he conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or if he "conspir[es] to violate any of the provisions of subsections (a), (b), or (c)," § 1962(d).  RICO defines "racketeering activity" to mean "any act or threat involving" enumerated state-law crimes, any "act" indictable under certain specified federal statutes, and various federal "offenses."  Section 1961(1).  In order to establish a "pattern of racketeering activity," the statute requires proof of "at least two acts of racketeering activity"

within a 10-year period.  Section 1961(5).  A person found to have violated RICO in a

civil action is liable for treble damages, costs and attorney's fees.  Section 1964(c).

Movants argue that Count IV fails to properly plead a RICO claim because there

are no factual allegations that:  establish the existence of an enterprise, show an

agreement on the part of U.S. Bank and other Defendants to violate state law or

otherwise engage in a conspiracy, show U.S. Bank and other Defendants engaged in

enterprise activities separate and apart from their regular business activities, state

the two predicate crimes upon which the allegations are based, or show the requisite

injury to business or property that was the result of the alleged substantive RICO

violation.  Movants further complain that U.S. Bank is lumped with other defendants

in a vague and conclusory statement that reads that all of the parties "did cooperate

jointly and severally in the commission of two or more of the RICO predicate acts."

TPC ¶ 79.  The Court agrees this count is wholly inadequate to assert a cause of

action for a RICO violation.  The Eleventh Circuit has affirmed dismissals of RICO

claims where the allegations are "merely conclusory and unsupported by any factual

allegations," as we have here.  *See Republic of Panama v. BCCI Holdings*

*(Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997).  Accordingly, Count IV will be

dismissed for this additional reason.

<u>Conclusion</u>

In accordance with the conclusion made herein, it is hereby

ORDERED AND ADJUDGED that U.S. Bank, N.A., as Trustee for the LXS 2006-2N

Motion to Dismiss Third Party Complaint or, in the alternative, Motion for More Definite Statement [DE 20] is granted in part and denied in part; and that OneWest Bank Group, LLC and Onewest Bank, FSB Third Party Defendants' Motion to Dismiss Third Party Plaintiff's Complaint [DE 28] is granted in part and denied in part.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead the complaint will be permitted. Capparelli is reminded that she must distinguish and differentiate the factual allegations and theories directed to one defendant in a count separate from every other defendant (unless certain defendants are alleged to be jointly liable for a particular claim). She must correspond allegations of fact or law under each claim separately against each defendant or set of defendants sued jointly, and state exactly what constitutes the basis for liability against each.

Capparelli may file an Amended Third Party Complaint on or before July 7, 2014. If Capparelli fails to file an Amended Third Party Complaint by this date, the Court will assume Capparelli has abandoned her cause and this case will be dismissed without further notice to the parties. Assuming Capparelli files an Amended Third Party Complaint, the parties are directed to file an updated joint scheduling report

within 14 days of receipt of the Amended TPC, so that this case can proceed in an orderly fashion.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of June, 2014.

KENNETH A. MARRA
United States District Judge